IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

THEODORE C. HINES,   )
                     )
    Plaintiff,       )    CIVIL ACTION NO.
                     )
v.                   )    01-AR-2273-S
                     )
BIRMINGHAM BOARD OF  )
EDUCATION,           )
                     )
    Defendant.       )

## MEMORANDUM OPINION

Before the court is a motion for summary judgment pursuant to Rule 56 filed by defendant, Birmingham Board of Education ("BBOE"). Plaintiff, Theodore Hines ("Hines"), alleges discrimination based on gender in violation of Title VII and 42 U.S.C. § 1983. Specifically, Hines alleges that BBOE promoted Eloise Yancy ("Yancy") instead of him to the position of Warehouse Clerk-Shipping and Receiving, based on the gender difference. BBOE has also filed a motion to strike Exhibits one and two of Hines' evidentiary submissions in opposition to BBOE's Rule 56 motions.

### Statement of Undisputed Facts

Yancy has worked for BBOE as an Assistant Custodian since 1983. In 1988 Yancy was promoted to Head Custodian and was responsible for the supervision of all custodial staff at Patterson Elementary School. Yancy also assumed additional duties

above and beyond those enumerated in her general job description. In her seventh year with BBOE, Yancy received a second promotion from Head Custodian to a Maintenance Helper #7SR in the Shipping and Receiving Department. In 1991, approximately eight (8) years after Yancy was hired, Hines was hired by BBOE as a Maintenance Helper #5 in the Shipping and Receiving Department. In 1993, Hines was promoted to Maintenance Helper # 7-C.

Paul Mitchell ("Mitchell"), Hines' immediate supervisor, created a new position that would further assist the Shipping and Receiving Department in purchasing and maintaining its inventory levels through the computer database system: Warehouse Clerk. The applicant for the position had to meet the following three minimum requirements: (1) High school graduate or GED certificate, (2) valid state of Alabama driver's license, and (3) qualified to operate a forklift and drive a truck when necessary. Neither the qualifications nor the performance responsibilities posted for the Warehouse Clerk position mentions anything about the potential employee needing to be computer proficient. These three requirements were generic insofar as it was the function of the BBOE's Personnel Department to ascertain that each applicant satisfied these basic requirements before the applicants were even interviewed for the position.

The first round of interviews was conducted by Mitchell and

2

Dr. Douglas Ragland ("Ragland"). The following applicants were interviewed: Hines, Yancy, Victor Pettus ("Pettus"), Kimberly Blackmon, John Baker ("Baker"), Jerome Reeves, Raul Juran and Harold White. Hines claims that Mitchell told him that the job was his after the first interview. Mitchell denies saying this. Mitchell testified that he had not identified any particular person to fill the position, either before the vacancy notice was posted or before the interviews were conducted. Mitchell also testified that he never told any applicant, at any time, that the job was unequivocally "theirs." Mitchell admits that he recommended Hines for the Warehouse Supervisor position-which, according to Mitchell, is an entirely different position from Warehouse Clerk.

Baker, a co-worker, testified that he heard Yancy tell Mitchell that "You're not going to do my [sic] like you did Velyn [Irones]. I'm going to sue you." Mitchell does not recall Yancy making this comment to him. Hines also claims that prior to his interview, Vivian Drake ("Drake"), supervisor of Custodial Support Services, made the statement to him that BBOE needed more female employees in the Service Center where the Shipping and Receiving Department was located. Pettus also claims that he heard Drake state that there were not enough female supervisors. Drake denied ever making these comments.

The second round of interviews was conducted by Mitchell,

3

Ragland and Drake. According to all of the members of the interview committee, the gender of the applicants for the position was never discussed by anyone on the committee. Hines even conceded that there was no indication from anything said in his interview that the gender of the applicants was playing a role in the selection process. Yancy's and Hines' performance evaluations in the position of Maintenance Helper #7SR were comparable. They also performed similar job duties. However, collectively, the committee decided that Yancy stood out as the most qualified person for the job. As basis for their recommendation, the committee members cited Yancy's service record with the BBOE and her demonstrated willingness to go above and beyond her regular job duties to assist wherever she was needed. The BBOE also claims that Yancy's certificate in computer science from Rutledge College made her a more viable candidate than Hines.

    Hines also alleges that BBOE engaged in systematic employment discrimination on the basis of gender. Yet when asked to recount each instance the BBOE discriminated against him because he is male, Hines responded that this was the only time that "they discriminated against him" because of his gender. When asked if there were other instances in which he observed males and females being treated differently by the BBOE, Hines said, "I don't-I don't know about other people. The only thing I can say is about me."

4

## Analysis

The Eleventh Circuit has held that if a plaintiff predicates liability under both Title VII and Section 1983, the legal elements of the claims are identical. *Stallworth v. Shuler,* 777 F.2d 1431, 1433 (11th Cir. 1985). Thus, Hines' Title VII and § 1983 gender discrimination claims will not be discussed separately because the analysis would be the same.

To establish a prima facie case of gender discrimination in a promotion decision under Title VII, a plaintiff must demonstrate that: (1) he is a member of a protected group; (2) he was qualified for, and applied for, the position; (3) he was rejected despite these qualifications; and (4) another equally or less qualified employee, who was not a member of the protected group, was promoted. *Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir. 1988), *cert. denied,* 490 U.S. 1006, 109 S. Ct. 1641, 104 L.Ed.2d 156 (1998). BBOE argues that Hines cannot prove a prima facie case of gender discrimination because he cannot show that a lesser qualified employee outside his protected group was promoted over him. Hines describes at length his work and educational experience that he believes qualifies him for the warehouse clerk position. Hines also claims that Yancy was less qualified and that she did not meet the minimum qualifications of the position. The only evidence Hines has that Yancy did not meet

5

the minimum qualifications is his own assertion that she did not drive any trucks while employed with the BBOE, as well as the testimony of two co-workers stating that they never saw Yancy drive a truck. Hines also points to the fact that Yancy's resume failed to state that she was qualified to operate a forklift or that she had any supervisory experience. BBOE testified that Yancy would not have been allowed to interview for the position without first meeting the minimum requirements. Hines has failed to raise a genuine dispute of material fact as to whether Yancy was less qualified for the job.

Assuming *arguendo* that Hines has established a prima facie case of discrimination, BBOE contends that his claim still fails as a matter of law because BBOE has strong, legitimate, non-discriminatory reasons for its non-selection of Hines. Although BBOE attempts to rely on the fact that Yancy had computer experience, some of which was not obtained until after she received the job, BBOE still proffers other legitimate, non-discriminatory reasons for its decision to hire Yancy instead of Hines. Hines argues that BBOE's reasons are pretext because the job description did not discuss computer proficiency and because the interview committee did not discuss computer proficiency with the applicants. Hines claims that the committee was unlikely to know if the applicants had computer experience inasmuch as their

letters of interest for the position and resumes did not disclose any information that would lead them to know this information. However, both applicants had worked for BBOE for a long period of time and received promotions in the past. Mitchell was on the interview committee and served as Hines' and Yancy's supervisor. In the recommendation of Yancy for the job, the committee stated that Yancy "has the experience of working in the warehouse for a number of years and she also exhibits a great deal of initiative to get work accomplished without being told to do so which [is] critical in this job capacity. She routinely volunteers to perform emergency duties such as . . ." Hines has not presented substantial evidence to raise a genuine dispute of material fact that the reasons proffered by BBOE were merely pretext. The fact that one of the nondiscriminatory reasons in the record is questionable is not sufficient to cast doubt on the remaining reasons.

  Hines' burden of proof extends beyond just establishing a prima facie case of discrimination. Hines must also show "that gender played a motivating part in [the] employment decision." *Haynes v. Caye & Co., Inc.*, 52 F.3d 928, 931 (11th Cir. 1995). For a plaintiff to meet this burden, the plaintiff must do more than "[question] the wisdom of the employer's reasons" and may not rely solely on evidence that he or she was more qualified

7

than the individual hired for the position. *Alexander v. Fulton*, 207 F.3d 1303, 1339 (11th Cir. 2000). Hines must show that intentional discrimination by BBOE was a cause of the challenged employment decision. Hines has not proven that Yancy's gender played a motivating part in her selection for the warehouse clerk position. Hines points to the one alleged stray comment by Drake that the Shipping and Receiving Department needed more female supervisors. This statement is only circumstantial evidence. It is not sufficient evidence to prove discriminatory intent or to rebut BBOE's legitimate, non-discriminatory reasons for hiring Yancy. Hines relies mainly on his own belief that he was more qualified for the position than Yancy. The Eleventh Circuit has explained that, "[w]e do not ask whether the employer selected the "most" qualified candidate, but only whether it selected the candidate based on an unlawful motive." *Denney v. City of Albany*, 247 F.3d 1172, 1188 (11th Cir. 2001). Hines' own assessment of his skill is not sufficient to prove intentional discrimination. Therefore, BBOE is entitled to summary judgment as a matter of law.

    As stated above, the court's analysis of Hines' § 1983 claim is the same as his Title VII claim. Hines' § 1983 claim is due to be dismissed for the same reasons his Title VII claim is due to be dismissed. BBOE's motion to strike Hines' Exhibits one and two

is due to be granted, but even if those exhibits were considered, the outcome would be the same.

## Conclusion

This court, by separate order, will grant BBOE''s motion for summary judgment and grant its motion to strike.

DONE this 25th day of November, 2002.

                                            WILLIAM M. ACKER, Jr.
                                            UNITED STATES DISTRICT JUDGE